IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TYRANT O. GABLE                                                                  PLAINTIFF

VERSUS                                                    CIVIL ACTION NO: 1:04cv581WJG-JMR

KLAIPEDA TRANSPORT FLEET, LTD.;
LASKARIDIS SHIPPING CO., LTD;
*M/V ERIDANAS* and JOHN DOES A-D                                       DEFENDANTS


KLAIPEDA TRANSPORT FLEET, LTD.                         THIRD-PARTY PLAINTIFF

VERSUS

THE HUMAN PERFORMANCE CENTER -
RIDGELAND, A DIVISION OF HUMAN
PERFORMANCE COMPANY, INC.                             THIRD-PARTY DEFENDANT


MEMORANDUM OPINION

This cause is before the Court on the motion [74-1] for summary judgment  filed by the

Defendant, Klaipeda Transport Fleet, Ltd. [Klaipeda], pursuant to Federal Rules of Civil

Procedure 56.  The Court will also address the motion [87-1] for leave to amend the complaint

filed by the Plaintiff, Tyrant O. Gable.  After due consideration of the pleadings, evidence of

record, applicable law, and being otherwise advised in the premises, the Court finds as follows.

Statement of Facts

On or about January 24, 2004, Tyrant O. Gable filed his Complaint against

Defendants, including Klaipeda, for injuries sustained when Plaintiff's leg allegedly "fell through

a hole in the wooden deck of a dimly let cargo hold on the *M/V Eridanas* causing him to sustain

severe, painful and permanent injuries to his left knee and body as a whole." (Ct. R., Doc. 1, Compl., ¶ 10.) At the time of the incident, Plaintiff was working as a longshoreman for P & O Ports [P & O], a stevedoring company, inside hold No. 2 of the vessel *M/V Eridanas*, loading a cargo of frozen poultry cartons. During the loading operation, Plaintiff stepped in a hole in the wooden deck of hold No. 2 and sustained injury to his left knee. The hole in which Plaintiff stepped was created by a P & O forklift while loading the cargo. Plaintiff brought suit pursuant to the Longshore and Harbor Workers' Compensation Act [LHWCA], 33 U.S.C. § 905(b).

Defendants removed the action to this Court basing jurisdiction on 28 U.S.C. § 1330, actions against foreign states, and 28 U.S.C. § 1332, actions between diverse parties. Klaipeda filed the instant motion seeking summary judgment on grounds that Klaipeda, as the owner of the *M/V Eridanas*, did not breach any duties owed to Plaintiff.

<u>Standard of Review</u>

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. R. 56©); *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 877 (5th Cir.2003). All disputed facts are resolved in favor of the party opposing the summary judgment. *Walker v. Thompson,* 214 F.3d 615, 624 (5th Cir.2000). The moving party bears the burden of establishing that there are no genuine issues of material fact. The nonmoving party may not rely upon mere allegations or denials within the pleadings, but must come forward with specific facts showing the presence of a genuine issue for trial. *Whelan v. Winchester Prod. Co.,* 319 F.3d 225, 228 (5th Cir.2003).

<u>Discussion</u>

Plaintiff's suit is based upon the third-party liability provision of section 905(b) of the LHWCA, requiring Plaintiff to prove that Klaipeda breached a duty of care owed to Plaintiff and that Plaintiff's injuries were caused by Klaipeda's negligence. *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96-97 (1994). The Supreme Court has held that the 1972 Amendments to the LHWCA, including section 905(b), were designed to "shift more of the responsibility for compensating injured longshoremen to the party best able to prevent injuries: the stevedore employer." *Id.* at 97.

In light of the LHWCA and its amendments, the Supreme Court has identified three general duties owed by a vessel owner to a longshoreman:

1)   the turnover duty, relating to the condition of the vessel upon the commencement of stevedoring operations and the corollary duty to warn of any hazards known to the vessel or which should be known to the vessel in the exercise of reasonable care;

2)   the active control duty, requiring the vessel owner, once stevedoring operations have begun, to exercise reasonable care to prevent injuries to longshoremen in areas that remain under the active control of the vessel; and

3)   the duty to intervene, requiring the vessel owner to intervene in the stevedore's operations when the owner has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, intends to continue working in the face of the hazard and therefore cannot be relied on to remedy the hazard.

*See Howlett*, 512 U.S. at 98-100; *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 167-176 (1981); *Pimental v. LTD Canadian Pacific Bul*, 965 F.2d 13, 15 (5th Cir. 1992).

-3-

Plaintiff has alleged that Klaipeda breached each of these duties.  Mindful that P & O was primarily responsible for Plaintiff's safety, *see Scindia* at 172, the Court will examine the pertinent facts in relation to the narrow duties owed by Klaipeda to Plaintiff.

I.      The Turnover Duty

Plaintiff alleges that Klaipeda failed to turn over a reasonably safe ship and that it failed to warn of hidden defects, including the allegedly "rotten" wood deck and poor lighting in cargo hold No. 2.  Particularly, Plaintiff argues that the condition of the deck and the poor lighting present genuine issues of material fact that preclude summary judgment.

Regarding the duty to turn over a reasonably safe ship, the Supreme Court has expounded on this duty as follows:

> A vessel must exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property.

*Howlett*, 512 U.S. at 98 (internal quotations and citation omitted).  Equally, the Supreme Court has commented on a vessel owner's duty to warn:

> A corollary to the turnover duty requires the vessel to warn the stevedore of any hazards on the ship or with respect to its equipment, so long as the hazards are known to the vessel or should be known to it in the exercise of reasonable care, and would likely be encountered by the stevedore in the course of his cargo operations, are not known by the stevedore, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

*Id.* at 98-99 (internal quotations and citation omitted).

The Court now turns to the pertinent undisputed facts.  The vessel was turned over to P & O for loading operations, and none of the crew members from the *M/V Eridanas* were involved

in the loading operations.  (Ct. R., Doc. 75, Exh. 1, pp. 30-31 and Exh. 2, pp. 19-20, 23.)  Prior to

beginning cargo operations, P & O's safety coordinator and representatives from SGS

Agricultural Services/SGS Control Services, Inc. [SGS], inspected the vessel's holds and cleared

it for loading operations.  (Ct. R., Doc. 75, Exh. 3, p. 6; Exh. 4, pp. 21-22; and Exh. 5.)

      At his deposition, Plaintiff testified that the floor of the hold was "fine" prior to loading

operations.  (Ct. R., Doc. 84, Exh. C, p. 83.)  His co-worker, Willie Taylor, noted some rotten

wood and holes in the deck and specifically pointed out such conditions to Plaintiff.  (Ct. R.,

Doc. 84, Exh. D, pp. 17-19.)  Willie Taylor described the condition of the deck as "middle of the

road" compared to other vessels that transported frozen poultry.  (Ct. R., Doc. 75, Exh. 2, pp. 24-

25.)  Steel plates were used to cover the holes in the deck.  (Ct. R., Doc. 84, Exh. D, p. 17.)  Once

the forklifts began to operate other holes were created because the deck was unable to hold the

full weight of the forklift and the load.  (Ct. R., Doc. 84, Exh. C, p. 43.)  In fact, the hole in

which Plaintiff stepped was created by a P & O forklift.  (Ct. R., Doc. 75, Exh. 1, pp. 34, 43.)

After seeing the impact of the forklifts on the wooden deck, Plaintiff described the deck as rotten.

(Ct. R., Doc. 75, Exh. 1, p. 43.)

      The existence or creation of holes in wooden decks by use of forklifts is a common

hazard or occurrence faced in cargo loading operations.  (Ct. R., Doc. 89, Exh. 1, pp. 21-22, 26;

Exh. 2, pp. 32-33; Exh. 3, pp. 46-47, 50-52; Exh. 4, pp. 27-29, 33; Exh. 5, pp. 9-11, 18; and Exh.

6, pp. 11-14.)  To address the recurring problem of holes in wooden decks, including aboard the

*M/V Eridanas*, P & O exercised the standard practice of placing steel plates over the holes and

continuing operations.  (Ct. R., Doc. 89, Exh. 1, pp. 10, 17-26; Exh. 2, pp. 33-34; Exh. 3, pp. 39-

41, 50-52; Exh. 4, pp. 27-29; Exh. 5, pp. 9-12; and Exh. 6, pp. 11-16.)

Plaintiff contends that the condition of the deck posed an unreasonable safety risk and that Klaipeda knew or should have known of the deck's condition and warned of the latent hazard. Plaintiff's assertions, however, run counter to the undisputed facts. First, P & O inspected the deck and cleared it for loading. Second, the existence or creation of holes in a wooden deck during the course of cargo operations is a common and expected danger for which the stevedore is prepared. Third, P & O anticipates the existence or creation of holes in wooden decks, evidenced by the routine practice of having steel plates on hand to place over the holes and continue operations. Fourth, P & O executed the common practice of placing steel plates over the holes in the deck of hold No. 2 aboard the *M/V Eridanas* and continued operations. Fifth, P & O forklifts created most, if not all, of the holes in the wooden deck, including the hole in which Plaintiff stepped. Sixth, the workers, including Plaintiff, were aware of the holes in the deck and the use of steel plates to cover them. Seventh, Plaintiff presents no evidence that the vessel knew or should have known that the deck would not support the forklifts.

Finally, the manner in which Plaintiff was injured is pertinent. Plaintiff was not injured because the condition of the deck was so degraded that it would not support his weight. Rather, as the Court appreciates it, Plaintiff was injured during the course of normal cargo operations. Particularly, a steel plate had been placed over a hole in the deck. (Ct. R., Doc. 75, Exh. 1, pp. 34, 43; Exh. 2., pp. 30, 49.) The steel plate was then moved to place cargo in the space. (Ct. R., Doc. 75, Exh. 1, pp. 34, 43; Exh. 2, pp. 30, 49.) When the steel plate was moved, the boxes on which Plaintiff was standing, and which he had stowed, shifted, causing him to step off and into the hole revealed by the removal of the steel plate. (Ct. R., Doc. 75, Exh. 1, pp. 34, 43; Exh. 2,

pp. 30, 49.)  P & O and the Plaintiff were in the best position to avoid injury through the exercise of ordinary care.

Under the present facts, it is essential to apprehend that the primary responsibility for the safety of its workers rests with the stevedoring contractor, and the shipowner is entitled to rely on the expertise of a competent stevedoring contractor to avoid exposing its workers to unreasonable risks.  *Scindia*, 451 U.S. at 170.  A shipowner may rely on the stevedore to warn and instruct its workers how to proceed in the face of obvious hazards.  *Keller v. United States*, 38 F.3d 16, 24 (1st Cir. 1994); *Polizzi v. M/V Zephyros II Monrovia*, 860 F.2d 147, 149 (5th Cir. 1988).  P & O understood that holes in wooden decks were a recurring hazard.  Therefore, it used steel plates to cover the holes, an easy remedy which allowed operations to proceed safely.  *See Manuel v. Cameron Offshore Boast, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997).

By incorporating this operational procedure, P & O recognized the hazard of holes, judged that the hazard could be easily and safely remedied, and instructed its workers how to proceed.  It appears logical to this Court that, as a general rule, where a stevedore has incorporated procedures into its normal operations to deal with common and remediable hazards, a shipowner cannot be said to have violated its turn over duty when a worker is injured involving the hazard.  Such a finding is in keeping with the purpose of the LHWCA and its amendments.

As an additional note, P & O forklifts caused the holes in the wooden deck, particularly the one into which Plaintiff stepped, and the workers were aware of the holes.  Such knowledge casts the holes as an open and obvious hazard and therefore, does not implicate Klaipeda's turn over duty or duty to warn.  *See Scindia Steam Navigation Co., Ltd. v. Riggs*, 512 U.S. 1216 (1994) (vacating the judgment and remanding the case to the Ninth Circuit for determination in

light of *Howlett*, 512 U.S. 92, where the Ninth Circuit failed to apply the open and obvious defense to the turn over duty); *Polizzi*, 860 F.2d 147, 149 (stating that the turnover duty is not breached where the defect is open and obvious and one which the longshoreman should have seen); *Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 670-72 (E.D. La. 1999) (finding that Supreme Court precedent in *Howlett* and *Riggs* cemented the availability of the open and obvious defense to a shipowner's duty to warn and duty to turn over, respectively).

Equally, Plaintiff's allegations that the vessel's poor lighting was a latent hazard is subject to the open and obvious defense. *See Clay*, 74 F. Supp. 2d at 672. Plaintiff fails to present any evidence tending to show that the light in hold No. 2 was a latent hazard that was any more apparent to the vessel owner than the stevedore or the workers within the cargo hold. *See Id.*

Based on the undisputed facts, the Court finds that Klaipeda did not breach its turn over duty. The *M/V Eridanas* was turned over for cargo operations in such a condition that P & O was able, through the exercise of ordinary care, to carry on cargo operations with reasonable safety. Additionally, the Court finds that Klaipeda did not breach its duty to warn of any hazards regarding the vessel. The holes in the deck were open and obvious, as was the lighting. Indeed, most and perhaps all of the holes were created by P & O forklifts, including the hole in which Plaintiff stepped. Equally, P & O, as a competent stevedore, anticipated that there might be holes in the wooden deck of the *M/V Eridanas* and acted accordingly. Finally, Plaintiff presented no evidence that Klaipeda knew or should have known of any hazards aboard the vessel. Consequently, the Court finds that Klaipeda's turn over duty and duty to warn were not implicated.

II.     The Active Control Duty

Plaintiff argues that the crew of the *M/V Eridanas* maintained active control over the maintenance of the deck of cargo hold No. 2, and that Klaipeda failed to remedy the hazards presented by the wooden deck.  The active control duty dictates that "the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Scindia*, 451 U.S. at 167.  This duty is applicable once stevedoring operations have begun and is restricted to those areas that remain under the active control of the vessel during stevedore operations.  *Howlett*, 512 U.S. at 98; *see Pimental*, 965 F.2d at 16.  To give rise to liability under the active control duty, such control must be over the actual methods of work used by the independent contractor and the operative details.  *Breaux v. United States*, No. 95-2924, 1996 WL 626328, at *4 (E.D. La. Oct. 23, 1996).

It is undisputed that cargo hold No. 2 was under the control and supervision of P & O during cargo operations.  Indeed, none of the crew members from the *M/V Eridanas* were involved in the loading operations.  (Ct. R., Doc. 75, Exh. 1, pp. 30-31 and Exh. 2, pp. 19-20, 23.)  Plaintiff has presented no evidence that Klaipeda or any of the vessel's crew actively engaged in the cargo operations or maintained any control over the cargo hold during operations. P & O forklifts created the holes during cargo operations, and there is no evidence that the vessel's crew was ever informed of the holes or asked to remedy them.  Although P & O had no authority to make permanent repairs, P & O employed the standard and simple remedial procedure of using steel plates to cover the holes and continued operations.

Even discounting the facts, Plaintiff's argument does not implicate the active control duty from a legal standpoint. Plaintiff essentially argues that Klaipeda labored under an ongoing duty to maintain the deck during stevedoring operations. Plaintiff presents no legal authority delineating such a duty, nor has this Court uncovered any such precedent. Plaintiff's argument is more similar to, and would in fact implicate, a duty to supervise stevedoring operations. In *Scindia*, the Supreme Court roundly rejected imposing on a vessel owner any duty to supervise stevedoring operations, stating that "[w]e are of the view that absent contract provision, positive law, or custom to the contrary . . . the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." *Scindia*, 451 U.S. at 172. Like a duty to supervise, a duty to maintain the deck during stevedoring operations "would repeatedly result in holding the shipowner solely liable for conditions that are attributable to the stevedore, rather than the ship," *Scindia* at 167, and would be inconsistent with the LHWCA and its amendments. Consequently, the Court finds that Klaipeda's active control duty was not implicated.

III.    The Duty to Intervene

Plaintiff asserts that Klaipeda had knowledge of the hazard posed by the condition of the deck in hold No. 2 and that P & O intended to continue operations even though such decision was "obviously improvident," thus breaching Klaipeda's duty to intervene and stop operations to repair the deck. "A vessel has a duty to intervene when it has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of 'obviously improvident' judgment, has failed to remedy it." *Pimental*, 965 F.2d at 17. A vessel owner's obligation to

intervene "is narrow and requires 'something more' than mere shipowner knowledge of a dangerous condition." *Singleton v. Guangzhou Ocean Shipping Co.,* 79 F.3d 26, 28 (5th Cir.1996).  In addressing the narrow duty to intervene, the Fifth Circuit offered the following direction:

> The question then is when should it become obvious to a shipowner that a stevedore's judgment – based on its specialized knowledge – is obviously improvident or dangerous. It seems to us that, consistent with *Scindia* 's basic thrust, in order for the expert stevedore's judgment to appear "obviously improvident," that expert stevedore must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken into account.

*Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997).

Plaintiff's position is contrary to the undisputed facts.  First, Plaintiff offers no evidence that Klaipdeda knew about the condition of the deck.  Particularly, Plaintiff presented no evidence tending to show that Klaipeda was informed or knew that there were holes in the deck of hold No. 2 deriving from the use of P & O forklifts or otherwise.  Second, Plaintiff did not show that Klaipeda knew or was informed of the manner in which P & O was proceeding, i.e. using steel plates to cover the holes.  Third, the use of steel plates to cover holes in wooden decks is a standard practice that offers an easy remedy to a recurring hazard associated with wooden decks.  The Court cannot find that P & O's use of steel plates in this instance was so hazardous that anyone could tell that the procedure posed an unreasonable risk of harm even in light of the stevedore's expertise.  Simply put, P & O's use of steel plates to cover holes created by P & O forklifts in the wooden deck of hold No. 2 aboard the *M/V Eridanas* was not objectively improvident.  Consequently, the Court finds that Klaipeda's duty to intervene was not implicated.

IV.     The Motion for Leave to Amend the Complaint

      Plaintiff filed a motion for leave to amend the complaint to properly invoke this Court's admiralty jurisdiction and to add a claim regarding an injury Plaintiff received while undergoing a functional capacity evaluation during the discovery phase of this case.  (Ct. R., Doc. 87, Exh. A.)  It also appears that Plaintiff seeks to add a defendant, Human Performance Company, Inc. [Human Performance], the company that administered Plaintiff's functional capacity evaluation. (Ct. R., Doc. 87, Exh. A.)

      Although the Court recognizes the maritime character of Plaintiff's negligence claims associated with his injuries aboard the *M/V Eridanas*, the Court finds that a claim against Human Performance or Klaipeda for Plaintiff's injuries occurring on land during the functional capacity evaluation are separate and distinct from any injury that occurred aboard the *M/V Eridanas* and does not implicate this Court's admiralty jurisdiction.  *See Rollin v. Kimberly Clark Tissue Co.*, 211 F.R.D. 670, 673-74 (S.D. Ala. 2001); *Harrison v. Glendel Drilling Co.*, 679 F. Supp. 1413, 1419-21 (W.D. La. 1988).  Likewise, the claim associated with Plaintiff's land-based injury does not invoke this Court's federal question or diversity jurisdiction.  In fact, Plaintiff has offered no independent federal jurisdiction as it relates to the additional claim.

      Having dispensed with any claim upon which independent federal jurisdiction could be based, the Court declines to exercise supplemental jurisdiction over claims which more properly and more prudently belong in state court.  *See Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002) (noting the general rule that a district court should decline jurisdiction over state law claims when all federal law claims have been dismissed); *Rollin*, 211 F.R.D. at 677-78 (finding that the court lacked supplemental jurisdiction over third-party complaint alleging malpractice

against physician who treated seaman on land for injury sustained upon navigable waters).

Consequently, the Court finds that Plaintiff's motion for leave to amend the complaint should be

denied.

<u>Conclusion</u>

For the reasons stated herein, the Court finds that the Defendant's motion for summary

judgment [74-1] should be granted. A separate final judgment in conformity with and

incorporating by reference the above Memorandum Opinion shall issue this date. Additionally,

the Court finds that Plaintiff's motion for leave to amend the complaint [87-1] should be denied

and said order shall be incorporated into the final judgment.

The Court notes that service has not been attempted on the *M/V Eridanas*, that said vessel

was sunken sometime in 2001 and that the arguments contained herein would apply to the vessel.

Additionally, no John Doe defendants have been served or identified.  Therefore, the final

judgment to be issued fully resolves the present action as to all parties, and this cause should be

dismissed with prejudice.  Each party shall bear their respective costs associated with these

motions.

 SO ORDERED this the 11th day of July, 2006.


        *Walter J. Gex III*
        UNITED STATES SENIOR DISTRICT JUDGE